UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JASON D. GATI,                                                                           Plaintiff,

v.                                                         Civil Action No. 3:14-cv-544-DJH-CHL

WESTERN KENTUCKY UNIVERSITY, et
al.,                                                                                     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason D. Gati attended Western Kentucky University from 2010 to 2011 to pursue a master's degree in mental health counseling. Gati, a disabled veteran, lived close to Elizabethtown but over an hour drive away from WKU's main campus in Bowling Green. Gati sued WKU and two administrators, Dr. Bill Kline and Crissy Priddy, after the university failed to offer courses necessary for completion of his master's degree either at the university's satellite Elizabethtown campus or through interactive technology that would allow him to participate remotely. Gati asserts claims for violations of the Americans with Disabilities Act (ADA), the Kentucky Civil Rights Act (KCRA), and the Rehabilitation Act, as well as claims for tortious interference with contractual and prospective contractual relations, promissory estoppel, and fraud. This matter is now before the Court on cross-motions for summary judgment. Defendants seek summary judgment on all claims asserted by Gati. (Docket No. 38) Gati moved for partial summary judgment with respect to his claims under the ADA, the KCRA, and the Rehabilitation Act. (D.N. 39) After careful consideration and for the reasons explained below, Defendants' motion will be granted, and Gati's motion will be denied.

## I. BACKGROUND

Gati became permanently disabled after he suffered a serious spine injury during mandatory physical fitness training for the United States Army. (D.N. 33-1, PageID # 442-43) His disability renders him unable to sit for longer than one hour at a time. (*Id.*, PageID # 498-99) After moving his family to Kentucky, Gati met with WKU Graduate Admissions Counselor Crissy Priddy at the university's Elizabethtown campus to discuss a graduate program in mental health counseling. (*Id.*, PageID # 439, 489; D.N. 30-1, PageID # 88-89) Priddy's job was to advise WKU graduate students in general without providing them with specific information as to courses and curriculum. (D.N. 30-1, PageID # 85) Quite simply, she would "help[] any students that had any questions about graduate education." (*Id.*, PageID # 89) Once a month, she would go to the Elizabethtown campus to assist prospective students who were interested in WKU's graduate programs. (*Id.*, PageID # 88-89) The parties disagree as to what Priddy told Gati during their meeting. Gati asserts that Priddy told him that nothing would interfere with him enjoying a full, unabridged master's degree curriculum at the Elizabethtown campus. (D.N. 33-1, PageID # 448) According to Priddy, her regular practice was to explain that classes would be offered in different locations and in various formats to be determined by individual university departments. (D.N. 30-1, PageID # 89)

In 2010, WKU admitted Gati to pursue a master's degree in counseling. (D.N. 33-1, PageID # 491) The parties agree that Gati completed two semesters at WKU's Elizabethtown campus without issue. (*See* D.N. 38-1, PageID # 702; D.N. 41, PageID # 776) However, when Gati attempted to register for the fall 2011 semester, he discovered that the classes required for his counseling degree were offered only in Bowling Green. (D.N. 33-1, PageID # 455) Gati then contacted Dr. Bill Kline, the head of the program, and told him that he could not attend

classes in Bowling Green due to his disability. (D.N. 36-1, PageID # 647) Kline referred Gati to Student Disability Services, and Gati later applied for disability services. (*Id.*, PageID # 647-48; D.N. 33-1, PageID # 496) In his application, Gati requested (1) priority registration and class selection and (2) ITV[1] and alternative class delivery. (D.N. 33-1, PageID # 496) Gati later clarified that he was also requesting that his classes be physically conducted at the Elizabethtown campus. (D.N. 32-1, PageID # 405)

In 2011, Howard Bailey, WKU's Vice President for Student Affairs, informed Gati that his accommodation requests had been denied, and that as a result, Gati would need to attend classes at the university's main campus in Bowling Green to maintain full-time enrollment status. (*See* D.N. 31-3, PageID # 194-95) Bailey consulted Kline to determine the feasibility of Gati's request to take courses via ITV. (D.N. 32-1, PageID # 382) Kline indicated to Bailey that he would not be able to determine a student's mastery of the course content via television. (*Id.*) Further, Kline testified that the faculty believed ITV would be inappropriate for the delivery of mental health counseling courses. (D.N. 36-1, PageID # 648) "The faculty believed that the kinds of class interactions that students have with each other, the activities that are conducted in classes and the skills development procedures used in these classes could not be delivered via ITV." (*Id.*, PageID # 648-49) According to Kline, the classes at issue required students to "get in small groups and look at each other in the presence of one another" so that they could have "direct counseling interactions . . . and receive immediate feedback." (*Id.*, PageID # 649) Counseling students needed to learn about body language, posture, and communication style,

---

[1] ITV refers to "video conferencing technology that is used in a classroom environment." (D.N. 31-6, PageID # 293) The technology utilizes cameras, microphones, and a special computer that sends audio and visual signals through the Internet so that people in different locations can talk to and see each other. (*Id.*)

3

which would be "very difficult to discern when somebody is sitting behind a table pushing a button on a microphone." (*Id.*)

Deborah Wilkins, WKU's General Counsel, explained to Gati why he would not be able to take all the necessary courses in Elizabethtown. (D.N. 31-7, PageID # 298) First, WKU did not have sufficient faculty to teach the courses in Elizabethtown. (*Id.*) Accreditation standards limited the number of courses that faculty could teach. (*Id.*) The limited number of faculty in the department thus limited the number of courses that could be offered at one time at any single location. (*Id.*) Accreditation standards also required part-time instructors to be properly credentialed, and there simply were not enough credentialed instructors due to market demand. (*Id.*, PageID # 299) Therefore, the problem could not be remedied by hiring part-time instructors.

Gati filed a Student Disability Services Grievance Form with WKU. (D.N. 31-3, PageID # 200) In response, WKU granted Gati's request for priority registration but again denied Gati's request that his required courses be offered via ITV and/or in Elizabethtown. (*Id.*, PageID # 203-04) Bailey reiterated to Gati that the mental health counseling courses required classroom interaction between students and instructor, instructor-supervised skills practice, and small group activities—none of which would be possible in an ITV setting. (*Id.*, PageID # 203) Bailey also noted that Gati had the option of living on campus in order to attend courses that were going to be offered in Bowling Green only.[2] (*Id.*, PageID # 204)

---

[2] Gati points out, and the Court acknowledges, that conflicting depositions make it unclear as to which individuals at WKU made various decisions related to Gati's accommodation requests. (*See* D.N. 41, PageID # 778-79; D.N. 32-1, PageID # 374; D.N. 34-1, PageID # 595; D.N. 36-1, PageID # 666) But as the Court's discussion will show, the ultimate issue in this case is the liability of WKU, not that of the individual defendants. *See infra* Section III. Since all of the potential decision makers were employed by WKU, it is not critical to the Court's analysis that WKU's decisions be precisely attributed to a specific WKU official. For the reasons explained

Gati alleges that WKU violated the ADA, the KCRA, and the Rehabilitation Act by failing to make reasonable accommodations for him to complete his graduate degree in mental health counseling. (D.N. 1-1) Gati also alleges that Kline and Priddy violated the KCRA by aiding and abetting WKU's discriminatory practices. (*Id.*) Finally, Gati alleges that Priddy is liable to him under theories of tortious interference with contractual and prospective contractual relations, promissory estoppel, and fraud. (*Id.*) Gati sues Kline and Priddy in both their official and individual capacities. (*Id.*) Kline and Priddy assert that they are entitled to official immunity. (D.N. 38-1, PageID # 708-10) WKU asserts that the accommodations Gati requested were not reasonable. (*Id.*, PageID # 713-19)

## II. STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be

---

below, the Court finds that WKU is entitled to summary judgment on all claims asserted by Gati. *See infra* Section III.B. Thus, the individual defendants in their official capacities are likewise entitled to summary judgment. *See Rosado v. City of Harriman, Tenn.*, No. 3:08-cv-353, 2012 WL 4485226, at *11 (E.D. Tenn. Sept. 27, 2012); *see also Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) (explaining that a suit against officers in their official capacities and against a governmental entity "are functionally the same and should therefore be subjected to the same analysis").

treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## III. DISCUSSION

### A. Claims Against Kline and Priddy

#### 1. *Official-Capacity Claims*

Gati sued Kline and Priddy in their official capacities for alleged violations of the KCRA. (D.N. 1-1) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "As such, it is no different from a suit against the State itself." *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (citing *Will*, 491 U.S. at 71). Thus, when an employee of a state entity is sued in his or her official capacity, the employee's actions are afforded the same immunity to which the entity itself would be entitled. *See Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009); *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Kline and Priddy argue that they are entitled to governmental immunity for the claims against them in their official capacities, "[b]ecause any claim against [them] in their official capacities is actually a claim against WKU—which is a party to this action." (D.N. 38-1, PageID # 708-09) Thus, they argue that all claims against them in their official capacities should be dismissed. *Id.* Gati responds that he could be entitled to equitable or injunctive relief in this

6

matter and that the KCRA contains a statutory waiver of sovereign immunity in any event. (D.N. 41, PageID # 782-83)

It is well settled that the Eleventh Amendment generally bars a damages action against a state employee sued in his or her official capacity. *See Cady*, 574 F.3d at 342 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). This is presumably why Gati discusses the possibility of equitable relief in his response to Defendants' motion for summary judgment. (*See* D.N. 41, PageID # 783) However, the distinction between monetary and equitable relief is not dispositive with respect to Gati's claims under the KCRA. Kline and Priddy, both employees of WKU, have been sued in their official capacities, meaning that they are entitled to the same immunity to which WKU would be entitled. *See Cady*, 574 F.3d at 342; *Yanero*, 65 S.W.3d at 522. Under Kentucky law, sovereign immunity does not prevent suit against the Commonwealth or its entities based upon the KCRA. Ky. Rev. Stat. § 344.010(1) (defining "person" to include the state and any of its subdivisions or agencies); *Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797 (Ky. 2000). Thus, sovereign immunity does not bar Gati's KCRA claims against WKU. And because Kline and Priddy, in their official capacities, are entitled only to the same immunity to which WKU is entitled, sovereign immunity does not protect them from these claims either. However, any recovery against Kline and/or Priddy in their official capacities will be, in effect, recovery against WKU. *See Grinter*, 532 F.3d at 572. Therefore, the Court's analysis of Gati's claims against WKU, *see infra* Section III.B, also applies to Gati's KCRA claims against Kline and Priddy in their official capacities, and the Court will grant summary judgment in their favor on those claims.

In addition, Gati sued Priddy in her official capacity under state law for tortious interference with contractual and prospective contractual relations, promissory estoppel, and

fraud. (D.N. 1-1) Again, the Eleventh Amendment generally bars a damages action against a state employee sued in his or her official capacity. *See Cady*, 574 F.3d at 342. A court may, however, grant prospective injunctive relief against a state officer to compel compliance with federal law. *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999). But Gati does not seek to compel Priddy's compliance with federal law. Instead, he alleges these state-law claims seeking damages. (D.N. 1-1; D.N. 41, PageID # 791-95) Therefore, Priddy is entitled to sovereign immunity on Gati's official-capacity claims against her under state law, and the Court will grant summary judgment in her favor on those claims.

### 2. *Individual-Capacity Claims*

Gati also sued Kline and Priddy in their individual capacities for alleged violations of the KCRA. (D.N. 1-1) Kline and Priddy argue that qualified immunity protects them from these claims. (D.N. 38-1, PageID # 709) In Kentucky, qualified official immunity applies to discretionary acts performed in good faith within the scope of the official's authority. *T.S. v. Doe*, 742 F.3d 632, 641 (6th Cir. 2014) (citing *Yanero*, 65 S.W.3d at 522). A discretionary act is one that involves "the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* "Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways . . . and where it is left to the will or judgment of the performer to determine in which way it shall be performed." *Hedgepath v. Pelphrey*, 520 F. App'x 385, 389 (6th Cir. 2013); *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). Bad faith can be predicated on "a violation of a constitutional, statutory, or other clearly established right" or the "willful[] or malicious[] inten[t] to harm the plaintiff." *Bouggess v. Mattingly*, 482 F.3d 886, 897 (6th Cir. 2007) (citing *Yanero*, 65 S.W.3d at 523).

In contrast, an official is not afforded immunity for the negligent performance of ministerial acts. *T.S.*, 742 F.3d at 641; *Yanero*, 65 S.W.3d at 522. A ministerial act is one that requires "only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *T.S.*, 742 F.3d at 641; *see also Yanero*, 65 S.W.3d at 522 (making the same finding). Once the officer makes a prima facie showing "that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444 (6th Cir. 2006) (citing *Yanero*, 65 S.W.3d at 523).

Kline and Priddy argue that "[t]hey utilized their own judgment and experience . . . to determine what kind of information to provide to [Gati]" and that their "interactions and/or advice to [Gati] were discretionary in nature and thus [they] are entitled to qualified official immunity." (D.N. 38-1, PageID # 710) Gati responds that Kline and Priddy are not entitled to any immunity under the KCRA. (D.N. 41, PageID # 784)

Gati is correct that the KCRA permits suits against individuals. *See* Ky. Rev. Stat. §§ 344.010(1) (including "individuals" in the definition of "person"), 344.450 (providing a civil remedy for those injured by violations of the KCRA). However, "[q]ualified immunity is a defense that can be invoked under Kentucky law." *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000). Therefore, Kline and Priddy may still be entitled to qualified immunity.

It is undisputed that Kline utilized discretion in determining that the accommodations requested by Gati were not feasible. Kline, a member of the faculty, concluded that the classes at issue could not be delivered effectively though ITV. (D.N. 36-1, PageID # 648) According to

9

Kline, body language, posture, and communication style were of utmost importance to counseling education and could not be learned by video. (*Id.*, PageID # 649) This is the type of decision that could have gone either way but is ultimately left to the decision maker. *See Hedgepath*, 520 F. App'x at 389; *Haney*, 311 S.W.3d at 240. With respect to Priddy, Gati does not challenge her assertion that she used judgment and experience to determine what kind of information to provide to Gati. In fact, Gati does not dispute the Defendants' characterization of their decisions as discretionary but instead asserts incorrectly that they are not entitled to any immunity under the KRCA. (D.N. 41, PageID # 784) Kline and Priddy are entitled to qualified official immunity on Gati's individual-capacity claims against them under the KCRA, and the Court will grant summary judgment in their favor on those claims.

In addition, Gati sued Priddy in her individual capacity under state law for tortious interference with contractual and prospective contractual relations, promissory estoppel, and fraud. (D.N. 1-1) Priddy again asserts that her actions were discretionary in nature and entitle her to qualified immunity. (D.N. 38-1, PageID # 710) As for these claims against Priddy, Gati responds: "Priddy was involved with [him] only in the realm of the normal course and requirements of her job as Assistant Director of Graduate Admissions in Elizabethtown. Her statements to [him] did not involve discretion, judgment, or personal deliberation." (D.N. 41, PageID # 784) However, Gati fails to point to any job requirement that Priddy breached. Priddy's job as Graduate Admissions Counselor was to inform prospective students generally about the graduate study programs offered at WKU. (D.N. 30-1, PageID # 85) Priddy would go to the Elizabethtown campus once a month to assist prospective students who were interested in WKU's graduate programs. (*Id.*, PageID # 89) Priddy and Gati met at the Elizabethtown campus and discussed Gati's interest in WKU's graduate programs. (*Id.*, PageID # 88-89; D.N.

10

33-1, PageID # 447-48). Although the parties dispute what was said during that meeting (*compare* D.N. 33-1, PageID # 448, *with* D.N. 30-1, PageID # 89), there is no dispute that Priddy's job was to "help[] any students that had any questions about graduate education." (D.N. 30-1, PageID # 89) This broad assignment required deliberation, discretion, and personal judgment, but did not impose upon Priddy a duty that was "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *See T.S.*, 742 F.3d at 641. The Court concludes that Priddy's actions were discretionary and within the scope of her authority. *See id.* (citing *Yanero*, 65 S.W.3d at 521-22).

Gati further argues that "[e]ven if . . . Priddy's negligent acts were discretionary, the acts were in bad faith because she provided false information to induce [him] to enroll in the program." (D.N. 41, PageID # 785) He argues that Priddy's bad faith can be inferred but points only to testimony indicating that the mental health counseling program was never wholly offered at the Elizabethtown campus. (*Id.*) This testimony does not prove that Priddy lied or otherwise acted maliciously toward Gati. If Priddy did tell Gati that the mental health counseling program was offered wholly at the Elizabethtown campus, it may have been an honest mistake. "The power to exercise [] honest discretion necessarily includes [the] power to make an honest mistake [in] judgment." *Kelly v. City of Fort Thomas, Ky.*, 610 F. Supp. 2d 759, 775 (E.D. Ky. 2009) (reversed in part on other grounds); *see Rowan Cty. v. Sloas*, 201 S.W.3d 469, 484 (Ky. 2006). Bad faith requires "some implication of self-interest, or a deliberate indifference, or sinister motive, rather than an honest mistake or oversight." *Kelly*, 610 F. Supp. 2d at 776; *Rowan Cty.*, 201 S.W.3d at 485. The evidence, viewed in the light most favorable to Gati, reveals at most a mistake, but it does not establish intent to harm. Nor does Gati specifically identify or prove the violation of a clearly established right. In sum, Gati fails to put forth

evidence to satisfy his burden of proving bad faith. Therefore, Priddy is entitled to qualified official immunity on Gati's individual-capacity claims against her under state law, and the Court will grant summary judgment in her favor on those claims.

### B. Claims Against WKU

Gati has asserted claims against WKU under the Americans with Disabilities Act (ADA), the Kentucky Civil Rights Act (KCRA), and the Rehabilitation Act. (D.N. 1-1) The KCRA makes it unlawful for a person to deny an individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation . . . on the ground of disability." Ky. Rev. Stat. § 344.120. The KCRA "is modeled after federal law and is interpreted consistently with the ADA." *James v. James Marine, Inc.*, 805 F. Supp. 2d 340, 346 n.1 (W.D. Ky. 2011) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003)). Therefore, Gati's claims under the KCRA do not require separate analysis. Similarly, the analysis that applies to ADA claims also applies to claims made under the Rehabilitation Act. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *see also Doe v. Woodford Cty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (noting that the Sixth Circuit discusses ADA and Rehabilitation Act claims together in light of the fact that "the purpose, scope, and governing standards of the acts are largely the same"). Accordingly, the analysis that follows applies to all of Gati's claims against WKU, as well as to Gati's KCRA claims against Kline and Priddy in their official capacities.

To make out a claim under the ADA, "a plaintiff must show that: (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). A disabled person is otherwise

qualified to participate in a program "if [he] can meet its necessary requirements with reasonable accommodation." *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). Thus, a plaintiff must propose an accommodation and prove that it is reasonable. *Jakubowski*, 627 F.3d at 202. The ADA further provides that discrimination includes

> a failure to make reasonable accommodations in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii) (2016).[3] However, the law does not require an educational institution "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Kaltenberger*, 162 F.3d at 436 (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). The reasonableness of an accommodation is a fact-specific inquiry. *Anderson*, 798 F.3d at 356. "Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Kaltenberger*, 162 F.3d at 436.

First, WKU does not dispute that Gati has a disability. (D.N. 38-1, PageID # 712) Therefore, the Court will treat this element as satisfied. Second, Gati would have been otherwise qualified for the mental health counseling program if he could meet its requirements with reasonable accommodation. *See Kaltenberger*, 162 F.3d at 435. Thus, Gati's claims necessarily turn on the issue of whether his accommodation requests were reasonable. Gati requested that

---

[3] Gati also cites a federal regulation, 34 C.F.R. § 104.44 (2017), listing "adaptation of the manner in which specific courses are conducted" as an example of an accommodation that may be required. (D.N. 39-1, PageID # 751) However, the statute makes clear that such an accommodation is required by law only if it would not "fundamentally alter" the academic program. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

13

WKU (1) make classes available via the Internet or ITV[4] and (2) physically conduct classes at the Elizabethtown campus. (D.N. 32-1, PageID # 405) The Court will discuss these requests separately.

WKU argues that offering classes in mental health counseling in ITV format is not a reasonable accommodation because, according to university faculty, such a format would sacrifice the face- to-face interaction that is critical to the program. (D.N. 38-1, PageID # 713-16) Gati responds that the interactive nature of ITV makes it a reasonable accommodation request and that, in any event, WKU did not make a fact-specific determination on Gati's accommodation request. (D.N. 41, PageID # 787-89)

Kline, the head of WKU's mental health counseling program, testified that faculty believed that ITV would be inappropriate for the delivery of their courses. (D.N. 36-1, PageID # 648) Specifically, they believed that class interactions among students, in-class activities, and skills development procedures could not be delivered via ITV. (*Id.*, PageID # 648-49) Further, Kline testified that counseling students needed to learn body language, posture, and style of communication, which would be "very difficult to discern when somebody is sitting behind a table pushing a button on a microphone." (*Id.*, PageID # 649) Finally, the classes at issue required students to have face-to-face counseling interactions so that they could receive immediate feedback from their instructors, which also would not be possible in ITV format. (*Id.*) In short, Kline's testimony shows that he believed ITV would substantially modify the program's standards. Although Gati argues that ITV allows interactive communication regardless of location (D.N. 41, PageID # 787), the Court defers to the professional academic judgments of Kline and the other faculty he consulted. *See Kaltenberger*, 162 F.3d at 436.

---

[4] Although ITV differs from online courses (D.N. 31-1, PageID # 116), the parties only address ITV in their briefs, which limits the Court's analysis here to ITV.

Gati also asserts, however, that WKU's decisional process was flawed in that it did not consider whether ITV was a reasonable accommodation for Gati. (*Id.*, PageID # 789; D.N. 39-1, PageID # 753) Gati cites Ninth Circuit case law to argue that universities must understand the specifics of an individual's disability and explore alternatives for accommodating him or her. (D.N. 41, PageID # 786) In the Ninth Circuit case, the dean did not investigate the proposed accommodation or determine whether it would substantially alter the school's standards. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818-19 (9th Cir. 1999). The present case is distinguishable from *Wong*. As the testimony summarized above indicates, WKU investigated the possibility of using ITV and determined from its faculty that utilizing ITV would substantially alter the program. Because the law does not require accommodations that substantially alter academic standards, *see* 42 U.S.C. § 12182(b)(2)(A)(ii), WKU did not violate the ADA when it declined to offer courses in ITV format.[5]

Further, WKU argues that offering all mental health counseling classes in Elizabethtown is not a reasonable accommodation because of insufficient faculty at that campus and a market shortage of credentialed part-time instructors. (D.N. 38-1, PageID # 717-18; *see* D.N. 31-7, PageID # 298-99) More specifically, WKU could not increase the course load of current faculty members or hire non-credentialed part-time instructors without risking its accreditation. (*Id.*) Gati responds that he was promised that the entire program would be offered in Elizabethtown and that he would not have needed an accommodation if this promise had been kept. (D.N. 41,

---

[5] Gati asserts that Deborah Wilkins, who did not believe he was disabled, made the decision to deny his accommodation requests. (D.N. 41, PageID # 789) But the record makes clear that Kline was consulted specifically as to whether the classes at issue could be taken via ITV as part of an accommodation request. (D.N. 31-1, PageID # 116; D.N. 36-1, PageID # 666) And Gati does not assert that Kline had any doubt with respect to Gati's disability. Therefore, Gati's blanket claim that his accommodation requests were denied by someone who did not believe he had a disability is without merit.

PageID # 789-90) Gati does not respond, however, to WKU's argument that it could not offer all classes in Elizabethtown because of insufficient faculty and credentials, leaving that assertion undisputed. *See* Fed. R. Civ. P. 56(e)(2). Loss of accreditation would certainly constitute a substantial modification of program standards—one that the law does not require, *see Kaltenberger*, 162 F.3d at 436. WKU thus did not violate the ADA when it declined to offer the entire mental health counseling program at its Elizabethtown campus. Accordingly, the Court will grant summary judgment for WKU on Gati's claims under the ADA, the KCRA, and the Rehabilitation Act, which likewise resolves Gati's KCRA claims against Kline and Priddy in their official capacities. *See supra* Section III.A.1.[6]

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion for summary judgment (D.N. 38) is **GRANTED**.

(2) Gati's motion for partial summary judgment (D.N. 39) is **DENIED**.

(3) A separate judgment will be entered this date.

September 27, 2017

**David J. Hale, Judge
United States District Court**

---

[6] In their briefs, the parties also discuss on-campus housing for Gati in Bowling Green as an alternative reasonable accommodation. (*See* D.N. 38-1, PageID # 718-19; D.N. 41, PageID # 790) However, this accommodation was not one that Gati requested. (*See* D.N. 32-1, PageID # 405)