UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JASON D. GATI,                                                              Plaintiff,

v.                                                      Civil Action No. 3:14-cv-544-DJH-CHL

WESTERN KENTUCKY UNIVERSITY, et
al.,                                                                     Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason D. Gati has moved to alter, amend, or vacate the Judgment in this case and

to certify a question of law to the Kentucky Supreme Court. (Docket No. 46) Because the Court

concludes that it did not commit a clear error of law in its previous Memorandum Opinion and

Order (D.N. 44), and because his request to certify a question is untimely and without merit,

Gati's motion will be denied.

## I.      BACKGROUND

Gati alleges that he was discriminated against on the basis of disability when he was

denied certain accommodations while attending Western Kentucky University. (D.N. 1-1) He

asserts claims of disability discrimination against WKU under the Kentucky Civil Rights Act, the

Rehabilitation Act, and the Americans with Disabilities Act. (*Id.*) He asserts state-law claims of

tortious interference with contractual relations, promissory estoppel, and fraud against Crissy

Priddy, WKU's Assistant Director of Graduate Admissions. (*Id.*) Gati further asserts that

Priddy and Dr. Bill Kline, WKU's Head of the Department of Counseling, aided and abetted

WKU's discriminatory practices. (*Id.*)

Defendants moved for summary judgment, arguing that the individual defendants were

entitled to immunity and that Gati's accommodation requests were not reasonable. (D.N. 38;

D.N. 38-1)  Gati also moved for partial summary judgment on his claims against WKU, arguing that no genuine issues of fact remained to be determined regarding the school's liability.  (D.N. 39; D.N. 39-1)  In a Memorandum Opinion and Order entered September 27, 2017, the Court granted Defendants' motion and denied Gati's motion.  (D.N. 44)  The Court determined that Priddy was entitled to sovereign immunity on Gati's official-capacity claims against her under state law; Kline and Priddy were entitled to qualified official immunity on Gati's individual-capacity claims against them under both state and federal law; and WKU—and by extension, Kline and Priddy in their official capacities—did not violate the KCRA, the Rehabilitation Act, or the ADA in denying Gati's accommodation requests.  (*Id.*)  Gati now seeks relief under Federal Rule of Civil Procedure 59(e) and certification of a question of law to the Kentucky Supreme Court.  (D.N. 46)

## II.     STANDARDS

"Rule 59(e) allows for reconsideration; it does not permit parties to effectively 're-argue a case.'"  *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).  A motion under Rule 59(e) may be granted for one of four reasons: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

When presented with questions of Kentucky law that may decide a case, and when it appears that there is no binding precedent from the Kentucky Supreme Court or Court of Appeals, then this Court may certify those questions of Kentucky law to the Kentucky Supreme Court.  Ky. R. Civ. P. 76.37(1).  The decision to certify is, however, left to this Court's discretion.  *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995).

Certification is "most appropriate when the question is new and state law is unsettled." *Ky. Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 863 (E.D. Ky. 2005) (quoting *Transamerica*, 50 F.3d at 372).

## III.    ANALYSIS

### A.    Reconsideration

Gati urges the Court to alter, amend, or vacate its earlier Judgment and allow him to proceed with all of his claims against Defendants. (D.N. 46-1, PageID # 856) The Court notes at the outset that Gati has not pointed to any newly discovered evidence, an intervening change in the law, or a need to prevent manifest injustice. (*See* D.N. 46; D.N. 46-1) The Court therefore presumes that Gati's Rule 59(e) motion is based only upon alleged errors of law. *See Henderson*, 428 F.3d at 620.

#### 1.    Official-Capacity Immunity of Kline and Priddy

##### a.    KCRA

The Court previously reasoned that because any recovery against Kline and Priddy in their official capacities would be, in effect, recovery against WKU, the Court's analysis of Gati's claims against WKU applied equally to Gati's claims against Kline and Priddy in their official capacities. (D.N. 44, PageID # 843) Gati asserts that the Court skipped an analysis of whether Kline and Priddy violated the KCRA by aiding and abetting disability discrimination under Ky. Rev. Stat. § 344.280. (D.N. 46-1, PageID # 858) But § 344.280 states that "[i]t shall be unlawful for a person . . . to conspire . . . [t]o aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this chapter." Ky. Rev. Stat. § 344.280(2). There can be no conspiracy to aid or abet in the absence of any discriminatory acts or practices. *See Reed v. Gulf Coast Enters.*, No. 3:15-CV-00295-JHM, 2016 WL 79998, at *12 (W.D. Ky. Jan. 6, 2016) ("A party who cannot be liable for the underlying tort as a matter of

law—as [the defendant] cannot be liable for the underlying disability discrimination claim— cannot be liable for conspiracy to commit that tort.") (citing *CNH Capital Am. LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461, 472-73 (6th Cir. 2014); *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 649-50 (E.D. Ky. 2012)). And the Court already concluded that WKU did not unlawfully discriminate against Gati.[1] (D.N. 44, PageID # 848-52) The Court is unaware of any authority, and Gati cites none, suggesting that the Court's analysis on that point was flawed. In the absence of a clear error of law, Gati's argument provides no basis for Rule 59(e) relief. *See Henderson*, 428 F.3d at 620.

Gati next points to an argument Defendants made in their motion for summary judgment, namely, that "[b]ecause any claim against these Defendants in their official capacities is actually a claim against WKU . . . Plaintiff has failed to state a viable claim against them other than the claims asserted directly against WKU." (D.N. 46-1, PageID # 858-59; D.N. 38-1, PageID # 709) Gati then argues that this statement was "insufficient to sustain a Motion for Summary Judgment, yet this claim [for aiding and abetting discrimination under § 344.280] was dismissed." (D.N. 46-1, PageID # 859) Again, Gati cites no authority suggesting that the Court made a clear error of law in its earlier Memorandum Opinion and Order.

Gati also takes issue with the Court's observation that because all of the individuals who made decisions related to his accommodation requests were employed by WKU, it was not critical to the Court's analysis that WKU's decisions be precisely attributed to a specific WKU official. (D.N. 46-1, PageID # 859; D.N. 44, PageID # 840) Specifically, Gati argues that the Court skipped an analysis of Kline and Priddy's aiding-and-abetting liability. (D.N. 46-1, PageID # 859) This argument is unpersuasive for the reasons already discussed. Gati also argues, without citation to any legal authority, that the Court's logic "ignores each person's

---

[1] To the extent that Gati challenges that conclusion, his arguments will be addressed below.

convoluted role in violating the law." (*Id.*) The Court's prior Memorandum Opinion and Order explained in detail why particular defendants could not be held liable under the law, and Gati has failed to demonstrate any clear errors of law that would necessitate Rule 59(e) relief.

Finally, Gati asserts that a jury should be able to determine whether different provisions of the KCRA were violated by Priddy and Kline individually or by WKU as a whole given that he sought the possibility of equitable or injunctive relief. (D.N. 46-1, PageID # 858) In his summary-judgment briefing, Gati argued that the claims against Defendants in their official capacities should not be dismissed "[s]ince equitable relief is still a possibility in this case." (D.N. 41, PageID # 783) As the Court explained in its earlier ruling, the distinction between monetary and equitable relief is relevant for purposes of sovereign immunity. (*See* D.N. 44, PageID # 843) *See Woodward v. Elizabethtown Cmty. & Tech. Coll.*, No. 3:14-CV-00776-CRS, 2015 WL 4464100, at *4 (W.D. Ky. July 21, 2015) ("The *Ex parte Young* exception allows claims for prospective relief against state officials in their official capacities to proceed uninhibited by sovereign immunity."). Sovereign immunity is not a bar to Gati's claims against Kline and Priddy in their official capacities, however, because the Kentucky legislature has waived sovereign immunity for claims brought under the KCRA. *See, e.g.*, *Dep't of Corr. v. Furr*, 23 S.W.3d 615, 616 (Ky. 2000). The Court granted Kline and Priddy summary judgment on Gati's official-capacity KCRA claims because it concluded that WKU did not violate the KCRA. (D.N. 44, PageID # 843, 848, 852) Because Gati has pointed to no clear error of law with respect to that conclusion, his argument concerning equitable relief is also unavailing.

### b. Tortious Interference with Contract, Promissory Estoppel, Fraud

The Court granted summary judgment in favor of Priddy on Gati's official-capacity claims against her for tortious interference with contract, promissory estoppel, and fraud. (D.N.

44, PageID # 844)  The Court reasoned that because Gati alleged these state-law claims seeking damages rather than injunctive relief, Priddy was entitled to sovereign immunity and could not be held liable for these claims in her official capacity.  (*Id.*)  Gati asserts that the Court erred because he "specifically included [Priddy's] official capacity because he could be entitled to equitable/injunctive relief," citing the prayer of his complaint, which included equitable and injunctive relief.  (D.N. 46-1, PageID # 859; D.N. 1-1, PageID # 20)  Gati also cites an argument he made earlier with respect to equitable or injunctive relief:

> Plaintiff could be entitled to equitable/injunctive relief in this matter.  For example, if the jury decides Defendants are liable for Plaintiff's worthlessly used GI Bill benefits at WKU, it could award credit hours/classes to Plaintiff to further pursue his education in the future.  Other equitable relief that may be sought here is prospective injunctive relief, i.e., making the programs available to disabled students via ITV or online.  Since equitable relief is still a possibility in this case, the claims against Defendants in their official capacities should not be dismissed.

(D.N. 46-1, PageID # 859; D.N. 41, PageID # 783)

The Court's finding that Gati alleged these state-law claims against Priddy seeking damages is supported by Gati's earlier briefing.  Within his discussion of the tortious-interference claim, Gati argued that his damages included "lost GI Bill benefits, attorney's fees, and two years of wasted time."  (D.N. 41, PageID # 791-93)  While discussing his promissory-estoppel and fraud claims, Gati again stated that his damages included "two years of [wasted] time, GI Bill benefits, and attorneys' fees/costs."  (*Id.*, PageID # 793-95)  Gati did, however, mention the possibility of equitable or injunctive relief in his complaint and elsewhere in his summary-judgment briefing.  (*See* D.N. 1-1; D.N. 41, PageID # 783)  The Court will therefore err on the side of caution and address the merits of these claims to determine whether Rule 59(e) relief is warranted.

### i.     Promissory Estoppel

Gati asserted a promissory-estoppel claim against Priddy, alleging that she made promises to him that she did not keep. (D.N. 1-1)  Defendants sought summary judgment on this claim, arguing that Priddy made no promise to Gati that would support a promissory-estoppel claim. (D.N. 38-1, PageID # 724)  Gati responded that Priddy promised him that he could complete his program at the Elizabethtown campus, inducing him to enroll in the program only to find out later that Priddy's promises were false. (D.N. 41, PageID # 793)

"Under Kentucky law, the four elements of promissory estoppel are '(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promise[e]; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 728 (W.D. Ky. 2013) (quoting *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004)).  In determining whether injustice can be avoided only by enforcement of the promise, the Court must also consider whether the promisee's reliance was reasonable. *See TWB Distribution, LLC v. BBL, Inc.*, No. 3:08-CV-509-S, 2009 WL 5103604, at *6 (W.D. Ky. Dec. 17, 2009); *see also Derby City Capital*, 949 F. Supp. 2d at 728 ("Additionally, the promisee's reliance on the promise must be justified.").

While the parties dispute whether Priddy told Gati that he could complete the entire mental-health counseling program at the Elizabethtown campus (*compare* D.N. 33-1, PageID # 474, *with* D.N. 30-1, PageID # 86), it is undisputed that Gati later transferred fifteen of the credits he earned at WKU to Lindsey Wilson College, where he graduated with a mental-health counseling degree. (D.N. 33-2, PageID # 533-34; D.N. 33-1, PageID # 470-71)  And although Gati asserts that he had to "start [the program] from the beginning," it is also undisputed that his education at Lindsey Wilson was paid for in full by the GI Bill; Gati still paid nothing out of

pocket. (D.N. 33-1, PageID # 470-71) And Gati completed the Lindsey Wilson program at a campus near his home. (*Id.*) The Court finds that the circumstances here do not constitute "the kind of injustice that can be avoided only by enforcement of the promise." *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 692 (W.D. Ky. 2014). In any event, it is unclear whether the prospective injunctive relief Gati suggests—an award of credit hours for unspecified future education and program availability for other students at WKU (D.N. 41, PageID # 783)—would even benefit him. *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 792 (W.D. Ky. 2001) (finding that plaintiffs had not shown that injustice would be avoided only by enforcement where enforcing promise would give no benefit to plaintiffs). The Court therefore did not clearly err in granting summary judgment to Priddy on this claim.

### ii.    Fraud

Gati also asserted a fraud claim against Priddy, alleging that she made misrepresentations of material fact to him while he was deciding whether to enroll at WKU. (D.N. 1-1) Defendants argued that Gati could not prove fraud because no one at WKU promised Gati that he could complete all of his classes in Elizabethtown. (D.N. 38-1, PageID # 727) In contrast, Gati argued that Priddy made these misrepresentations and then testified later that she did not. (D.N. 41, PageID # 794)

Fraud-by-misrepresentation claims require proof that

(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Sadler v. Advanced Bionics, Inc.*, 929 F. Supp. 2d 670, 682 (W.D. Ky. 2013) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)). With respect to the

second element, "the party making the representation—at the time of making it—must know the representation is false or make it recklessly without any knowledge of its truth." *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 615 (Ky. Ct. App. 2011).

Assuming that Priddy falsely represented to Gati that he could complete the entire program at the Elizabethtown campus, Gati has not shown that, at the time she made the representation, Priddy knew it was false or made it recklessly without any knowledge of its truth. Gati merely points to the defendants' summary-judgment motion and their evidence that Dr. Kline, the counseling department head, stated that the program was never fully offered at the Elizabethtown campus. (D.N. 41, PageID # 792-93; *see* D.N. 36-1, PageID # 637-38, 640) But Gati makes no connection between Kline's statement and Priddy, who worked in admissions (D.N. 30-1, PageID # 82, 84). And as Gati acknowledges (D.N. 41, PageID # 793), a flyer for WKU's Elizabethtown campus listed the mental-health counseling program as one that was available onsite. (D.N. 41-1, PageID # 797) In short, Gati has failed to show that Priddy knew that the program was not offered onsite in Elizabethtown or that she made that representation recklessly. The Court therefore did not make a clear error of law in granting summary judgment on this claim.

### iii. Tortious Interference

Finally, Gati asserted a tortious-interference claim against Priddy, alleging that she interfered with prospective contractual relationships between Gati and any third parties with whom he might have chosen to contract if not for Priddy's actions. (D.N. 1-1) Defendants argued that Gati's tortious-interference claim failed as a matter of law because Gati failed to show the existence of a contractual relationship and damages. (D.N. 38-1, PageID # 720-22) Gati responded that "Defendants fail to recognize the interference with prospective contractual relationships with a different school when [he] lost his GI Bill benefits by having to begin anew

the whole mental health counseling program." (D.N. 41, PageID # 791-92) "Had [he] not lost the benefits he used at WKU," Gati argued, "he would have been able to use them for any other education." (*Id.*, PageID # 792) He then asserted that "Priddy's statements ruined these contracts before they ever began." (*Id.*)

> Under Kentucky law,
>
> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 756 (W.D. Ky. 2006) (quoting Restatement (Second) of Torts § 766B (Am. Law Inst. 1979)). "[A] party may not recover under [this tort] in the absence of proof that the opposing party 'improperly' interfered with his prospective contractual relation." *Id.* (quoting *Nat'l Collegiate Athletic Ass'n ex rel. Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1988)). To determine whether an actor's interference is improper, Kentucky courts examine several factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Id.* (quoting Restatement (Second) of Torts § 767).

The Court concludes that Gati's claim for tortious interference with prospective contractual relations fails as a matter of law. Gati has not shown that Priddy actually interfered with any prospective contractual relation. To the contrary, the evidence shows that Gati was later able to enroll at Lindsay Wilson College and complete a counseling program there using his GI Bill benefits. (D.N. 33-1, PageID # 470-71) Gati's assertion that Priddy "interfere[d] with

prospective contractual relationships with a different school" (D.N. 41, PageID # 791) is not supported by the facts. The Court therefore did not clearly err in granting summary judgment on this claim. *See Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 777 (6th Cir. 2009) ("Because [the plaintiff] cannot show actual interference, the district court properly granted summary judgment on this claim.").

### 2. Individual-Capacity Immunity of Kline and Priddy

#### a. KCRA

The Court granted summary judgment to Kline and Priddy on Gati's KCRA claims against them in their individual capacities on the basis of qualified official immunity. (D.N. 44, PageID # 844-46) Gati now argues that Kline and Priddy's decisions were "nothing more than ministerial job duties" and that as such, Kline and Priddy should not have been granted qualified immunity. (D.N. 46-1, PageID # 862) Gati previously argued that Priddy's statements to Gati "did not involve discretion" and that Priddy had an "absolute, certain, and imperative" duty to perform her job. (D.N. 41, PageID # 784-85) But the Court rejected that argument, reasoning that the undisputed facts showed that both Kline and Priddy exercised discretion in making the challenged decisions. (D.N. 44, PageID # 845-46)

"A motion under Rule 59(e) does not simply provide an opportunity to reargue a case, and it must be supported either by a showing that the district court made an error of law or by newly discovered evidence." *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008). It appears that Gati simply reargues whether Kline and Priddy's actions were ministerial or discretionary. Thus, the Court sees no basis for granting Rule 59(e) relief on this issue.[2] *See*

---

[2] Gati also argues that the Court erred in finding it undisputed that Kline utilized discretion in determining that the requested accommodations were not feasible. (D.N. 46-1, PageID # 862-63; *see* D.N. 44, PageID # 845) In particular, Gati suggests that Kline's testimony that his decision was not specifically based on Gati's disability "is contrary to" the Court's undisputed finding on

*Acosta v. Off Duty Police Servs., Inc.*, No. 3:13-cv-935-DJH-LLK, 2017 WL 2837018, at *2 (W.D. Ky. June 30, 2017) ("Because the Court has previously addressed this argument and the defendants have not provided any new law or facts to support it, the Court need not reconsider the issue.").

> **b.  Tortious Interference with Contract, Promissory Estoppel, Fraud**

The Court determined that Priddy was also entitled to qualified immunity on Gati's other individual-capacity claims against her under state law.  (D.N. 44, PageID # 846-48)  In challenging this determination, Gati refers to statements Priddy made to him regarding the classes available at the Elizabethtown campus and that campus's ability to accommodate students with disabilities.  (D.N. 46-1, PageID # 864)  Gati argues that it is "preposterous" to conclude that an admissions counselor uses personal judgment and discretion when telling prospective students what classes are offered at a certain location.  (*Id.*)  He asserts that telling students about classes is an "absolute, certain, and imperative" "execution of a specific act arising from fixed and designated facts."  (*Id.*, PageID # 864-65 (quoting *T.S.*, 742 F.3d at 641))

---

discretion.  (D.N. 46-1, PageID # 863)  Gati's argument is not well taken and does not explain how this testimony negates the Court's earlier finding that Kline utilized discretion.  As discussed in the Court's earlier Memorandum Opinion and Order, Kline and the other faculty believed that interpersonal interaction was essential for the counseling program and that such interaction could not take place through video or ITV.  (D.N. 44, PageID # 845-46; *see* D.N. 36-1, PageID # 648-49)  With respect to Priddy, Gati argues that contrary to the Court's statement in its earlier opinion (D.N. 44, PageID # 846), he did challenge Priddy's assertion that she used judgment and experience to determine what information to provide to Gati.  (D.N. 46-1, PageID # 863)  Gati points the Court to his earlier argument that Priddy was involved with Gati "only in the realm of the normal course and requirements of her job as Assistant Director of Graduate Admissions" and that her statements to Gati "did not involve discretion, judgment, or personal deliberation."  (*Id.*; D.N. 41, PageID # 784)  Importantly, Gati made these arguments with respect to the state-law claims against Priddy after asserting that it was "clear that Defendants in their individual and official capacities *are not entitled to immunity under the KCRA*."  (D.N. 41, PageID # 784 (emphasis added))  That is why the Court waited to address the arguments until it reached a discussion of the state-law claims against Priddy.  (*See* D.N. 44, PageID # 846)

Again, Gati's argument falls short of showing a clear error on the part of the Court. Notwithstanding his ill-considered characterization of the Court's conclusion as "preposterous," Gati cites no caselaw contradicting the Court's position. (*See id.*) As the Court explained before, Gati fails to point to any job requirement that Priddy breached. (D.N. 44, PageID # 846) Priddy's job required her to travel to Elizabethtown to advise students generally regarding WKU's graduate programs and to help students who had questions regarding graduate education. (D.N. 30-1, PageID # 85, 89) This job description is "devoid of any language directing [Priddy] to execute 'specific act[s] arising from fixed and designated facts.'" *See Jackson v. Renfrow*, No. 1:14-CV-00140-GNS-HBB, 2016 WL 1452431, at *3 (W.D. Ky. Apr. 13, 2016) (quoting *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010)). Seeing no clear error of law here, the Court finds no basis for granting Rule 59(e) relief.

The Court previously determined that Gati had not shown that Priddy acted in bad faith. (D.N. 44, PageID # 847-48) Gati asserts that the Court, in making this determination, failed to view the evidence in the light most favorable to him. (D.N. 46-1, PageID # 865) According to Gati, the evidence viewed in the light most favorable to him shows that Priddy purposefully lied to him in order to get him to register for classes. (*Id.*)

Gati is correct that the Court must accept the evidence of the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But as explained in the earlier Memorandum Opinion and Order, Gati failed to present evidence of bad faith on the part of Priddy. (*See* D.N. 44, PageID # 847-48) "An action by a public official is done in bad faith when the official either 'willfully or maliciously intended to harm the plaintiff,' or where the official 'acted with a corrupt motive.'" *Kelly v. City of Fort Thomas*, 610 F. Supp. 2d 759, 776 (E.D. Ky. 2009) (quoting *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006)). "In addition, to find bad faith

there 'must be some implication of self-interest, or a deliberate indifference, or sinister motive, rather than an honest mistake or oversight.'" *Id.* (quoting *Sloas*, 201 S.W.3d at 485).

The evidence on which Gati relies falls well short of showing that Priddy acted in bad faith. Viewed in the light most favorable to Gati, the evidence shows that Priddy assured Gati that the program was offered in Elizabethtown and that ITV was available to assist disabled students in taking such courses; however, top officials at WKU later testified that the opposite was true. (*See* D.N. 41, PageID # 792) Contrary to Gati's suggestion (D.N. 46-1, PageID # 865), there is no evidence that tends to show that Priddy *purposefully* lied to induce him to register for classes. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) ("[On summary judgment,] th[e] [nonmoving] party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."). In the absence of such evidence, Priddy is entitled to qualified official immunity for her discretionary acts. *See Sloas*, 201 S.W.3d at 475. The Court concludes that it did not clearly err in this regard.[3]

### 3.    Liability of WKU

In its prior Memorandum Opinion and Order, the Court concluded that WKU did not violate the ADA, the KCRA, or the Rehabilitation Act in refusing to offer classes via ITV and to conduct classes at the Elizabethtown campus. (D.N. 44, PageID # 848-52) In his Rule 59(e) motion, Gati asserts that whether an accommodation request is reasonable is "a fact-specific question" that should have precluded summary judgment. (D.N. 46-1, PageID # 866) Further,

---

[3] Gati also argues that certain factual disputes should be decided by a jury, not summary judgment, and that because the Court disposed of these claims on qualified-immunity grounds, particular facts were not addressed. (D.N. 46-1, PageID # 865-66) But only disputes of *material* fact will prevent summary judgment. *Alexander*, 822 F.2d at 1435. And the Court may dismiss claims at the summary-judgment stage on the sole basis of qualified immunity. *See, e.g.*, *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-cv-844-DJH, 2016 WL 1574149, at *5 (W.D. Ky. Apr. 19, 2016).

he asserts that the Court decided whether accommodations were reasonable, drawing all inferences in WKU's favor. (*Id.*) The Court disagrees with Gati's assertion that the Court failed to follow the applicable standard. Moreover, the fact-specific nature of the reasonableness inquiry does not preclude summary judgment.

> [A] court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is "reasonable on its face, *i.e.*, ordinarily or in the run of cases," or if the defendant establishes as a matter of law that the proposed modification will cause "undue hardship in the particular circumstances."

*Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 355 (6th Cir. 2015) (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)). Here, as the Court explained before, Gati failed to show that his accommodation requests were reasonable, while WKU showed that granting Gati's accommodation requests would have substantially altered academic standards. (D.N. 44, PageID # 848-52)

As for Gati's broad second assertion, the Court will address his specific arguments below as they relate to the individual accommodation requests that were denied. *See Hanson v. Madison Cty. Det. Ctr.*, No. 5:14-CV-99-REW, 2017 WL 3022323, at *7 (E.D. Ky. July 17, 2017) ("Plaintiff's critiques are broad and wide-ranging, essentially relitigating the summary judgment motion. The Court will not revisit the entire record on a motion to amend.").

### a. ITV

The Court previously concluded that WKU did not violate the ADA when it declined to offer courses in ITV format. (D.N. 44, PageID # 851) Gati now asserts that WKU did not meet its burden to show that it considered the feasibility, cost, and effect on the program of alternative accommodations and then rationally concluded that allowing the accommodations would lower academic standards or substantially modify the program. (D.N. 46-1, PageID # 866-67) In support of his argument that WKU had this precise burden, Gati cites caselaw from the First

Circuit.  (*See id.*; *see also* D.N. 41, PageID # 786)  But under binding Sixth Circuit authority, discrimination laws do not require educational institutions "to lower or to effect substantial modifications of standards to accommodate" the disabled.  (D.N. 44, PageID # 849) *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)).  And the Court "must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Id.*

In accordance with this authority from the Sixth Circuit, the Court deferred to the professional academic judgments of Kline and other faculty who testified that courses in the mental-health counseling program could not be delivered effectively through ITV.  (D.N. 44, PageID # 850; *see* D.N. 36-1, PageID # 648-49)  Gati's criticism of the Court for accepting Kline's testimony and focusing on whether classes were pedagogically appropriate for ITV (*see* D.N. 46-1, PageID # 867) is unfounded, and misplaced.

In addition, Gati seizes yet again upon Kline's admission that he decided whether ITV was a reasonable accommodation without specifically considering Gati's disability.  (*Id.*; *see* D.N. 36-1, PageID # 653, 658-59, 666)  In the earlier Memorandum Opinion and Order, the Court concluded that WKU investigated the possibility of using ITV and determined that it would substantially alter academic standards; therefore, WKU did not violate the ADA in declining to offer courses in ITV format.  (D.N. 44, PageID # 851)  Gati asserts that in the light most favorable to him, the Court should have found that because some mental-health counseling classes were still going to be offered in Elizabethtown, online, and in Radcliff, he would not have had to access all of the classes via ITV.  (D.N. 46-1, PageID # 867)  Gati further posits that while it might have been a reasonable decision not to offer the classes via ITV to the general public, Defendants did not show that his use of the ITV system for some classes would constitute

16

a fundamental alteration of the program. (*Id.*) To the contrary, WKU presented undisputed evidence showing that faculty believed that the quality of the specific graduate program at issue would suffer if classes were conducted via ITV. (D.N. 36-1, PageID # 648-49) Moreover, Gati fails to cite any binding authority to support the proposition that WKU was required to separately consider whether accommodating him alone would fundamentally alter the program. In the absence of any such authority, the Court is unable to conclude that it clearly erred in its decision.

### b.     Decisional Process on ITV

The Court rejected Gati's argument that WKU's decisional process was flawed in that it failed to consider whether ITV was a reasonable accommodation for Gati. (D.N. 44, PageID # 851) Gati now asserts that the Court erred in finding that Kline was consulted as to whether the classes at issue could be taken via ITV as part of an accommodation request. (D.N. 46-1, PageID # 867-68; *see* D.N. 44, PageID # 851) Gati argues that Kline testified that he did not consider ITV in the context of a disability-accommodation request. (D.N. 46-1, PageID # 868) But Gati misrepresents Kline's testimony. Kline did not fail to consider ITV as it relates to an accommodation request; rather, he testified that he did not consider ITV in the specific context of *Gati's* disability. (*See* D.N. 36-1, PageID # 653, 658-59) As the Court has already indicated, Gati cites no authority suggesting that WKU was required to consider ITV as an accommodation for Gati's disability in particular. And here, WKU considered whether ITV was a reasonable accommodation and determined that it was not. (D.N. 36-1, PageID # 653) The Court sees no clear error that would warrant Rule 59(e) relief.

Gati next complains that the Court dismissed in a footnote the purported fact that Wilkins, who did not believe Gati was disabled, made the decision to deny his accommodation requests. (D.N. 46-1, PageID # 868) But Gati cites nothing in the record showing that it was Wilkins who decided to deny his accommodation requests. (*See id.*) *See Whitehead*, 301 F.

App'x at 489 ("A motion under Rule 59(e) does not simply provide an opportunity to reargue a case, and it must be supported either by a showing that the district court made an error of law or by newly discovered evidence.").

Gati also argues that the Court ignored other ADA and Rehabilitation Act requirements that WKU lacked, including a requirement that the parties engage in an interactive process. (D.N. 46-1, PageID # 868) Again, Gati fails to support his argument with newly discovered evidence or caselaw demonstrating that the Court committed a clear error of law. (*See id.*) Indeed, the authority Gati cited before in support of a similar argument came from another circuit and has not been adopted by the Sixth Circuit. (D.N. 41, PageID # 777 (citing *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 26 (1st Cir. 1991)) The Court therefore concludes that it did not clearly err in rejecting Gati's argument with respect to WKU's decisional process.

### c.      All Classes Offered in Elizabethtown

The Court concluded that WKU did not violate the ADA when it declined to offer the entire mental-health counseling program at the Elizabethtown campus. (D.N. 44, PageID # 852) Gati now states that the Court viewed the facts in the light most favorable to Defendants. (D.N. 46-1, PageID # 868) This blanket assertion is unsupported and requires no further analysis. *See Brown v. La. State Senate*, No. 11-620-SDD-SCR, 2013 WL 5603232, at *1 (M.D. La. Oct. 11, 2013) (finding no basis for Rule 59(e) relief where movant made blanket assertion of error "without any reference to the Court's alleged errors or any explanation why the evidence and jurisprudence relied upon by the Court [was] erroneous"); *Conner v. State Farm Mut. Auto. Ins. Co.*, No. 1:03-CV-195-R, 2006 WL 1642302, at *1-2 (W.D. Ky. June 12, 2006) (rejecting the plaintiff's argument that the Court failed to view the facts in the light most favorable to her and declining to reconsider earlier decision).

Gati next repeats his earlier assertion that WKU's argument that having all classes in Elizabethtown was an unreasonable accommodation "is confusing since it was the lack of classes at Elizabethtown that prompted the need for an accommodation at all." (D.N. 46-1, PageID # 868) This argument remains unpersuasive. As the Court explained in its earlier Memorandum Opinion and Order, WKU presented evidence showing that it did not have sufficient faculty to offer all classes in Elizabethtown. (D.N. 44, PageID # 851-52; *see* D.N. 31-7, PageID # 298-99) Gati has not presented any evidence to the contrary.

Gati also points to inconsistencies in what he was told regarding whether all classes would be available in Elizabethtown. (*Compare* D.N. 33-1, PageID # 474, D.N. 41-1, PageID # 797, *and* D.N. 41-4, PageID # 808, *with* D.N. 31-7, PageID # 298) But the issue here with respect to WKU's liability is whether offering all classes in Elizabethtown was a reasonable accommodation. (*See* D.N. 44, PageID # 849-50 (citing *Kaltenberger*, 162 F.3d at 435-36)) It is therefore unclear how these inconsistencies—and Gati's assertion that he was lied to (D.N. 46-1, PageID # 869)—are relevant to the claims against WKU. Gati fails to show a clear error of law.

### 4.      Gati's Motion for Partial Summary Judgment

Finally, Gati argues that the Court failed to address the arguments in his motion for partial summary judgment and denied it without analysis. (*Id.*) Gati further asserts that "[t]he Court's Memorandum [Opinion] mirrors Defendants' Motion for Summary Judgment and ignores relevant sections from [his motion]." (*Id.*) The Court's Memorandum Opinion and Order did in fact address the arguments in Gati's motion for partial summary judgment, however. (*See* D.N. 44) And it does not merely mirror the defendants' motion for summary judgment; rather, it analyzes the parties' arguments as to each discrete issue. (*See id.*) Disagreement with the result reached by the Court is insufficient to warrant relief under Rule 59(e). *Yandal v. Holland*, No. 12-CV-26-GFVT, 2013 WL 3293361, at *5 (E.D. Ky. June 28, 2013).

On the outset, the Court notes that this section of Gati's Rule 59(e) motion consists largely of arguments copied and pasted from his earlier summary-judgment motion. (*See* D.N. 46-1, PageID # 869-70) This practice is disfavored. *See Przybysz v. City of Toledo*, No. 3:16-CV-0353, 2018 WL 400325, at *3 (N.D. Ohio Jan. 12, 2018). Nonetheless, the Court will address these arguments to the extent that they are specific as to how the Court allegedly erred.

Gati first asserts that the Court did not address Kline's testimony that he did not consider Gati's disability specifically in deciding that Gati would need to complete the program at WKU's main campus in Bowling Green. (D.N. 46-1, PageID # 870; *see* D.N. 36-1, PageID # 658-59) Although the Court did not cite these particular pages of Kline's deposition in its opinion, the Court addressed and rejected the argument that this testimony was presented to support—namely, that WKU's decisional process was flawed in that it did not consider whether ITV was a reasonable accommodation *for Gati*. (*See* D.N. 44, PageID # 851) Gati's assertion is unpersuasive and misleading.

Second, Gati asserts that Wilkins's "major role and wrong-doing [were] barely recognized." (D.N. 46-1, PageID # 870) The Court must assume based on the preceding text that Gati is referring to the opinion Wilkins offered in her deposition that she "was not then and, frankly, am not today absolutely comfortable that [Gati] was disabled in a way that would have prevented him from completing this program on the main campus." (*See id.*, PageID # 869; D.N. 39-1, PageID # 750-51; D.N. 31-4, PageID # 214) The Court addressed and rejected Gati's argument that Wilkins, who did not believe that Gati was disabled, made the decision to deny his accommodation requests. (*See* D.N. 44, PageID # 851) Gati alleges no error in the Court's findings that (1) it was Kline (not Wilkins) who was consulted as to whether the classes at issue could be taken via ITV; and (2) there was no assertion that Kline had any doubt with respect to

Gati's disability.  (*Id.*; *see* D.N. 31-1, PageID # 116; D.N. 36-1, PageID # 666)  Gati's assertion again lacks merit.

Third, Gati asserts that the Court ignored the facts from Kline that were damaging to Defendants.  (D.N. 46-1, PageID # 870)  Gati appears to be referring again to Kline's testimony that he did not take Gati's disability into account specifically in making the decision to deny the accommodation requests.  (*See id.*; D.N. 39-1, PageID # 752-53; D.N. 36-1, PageID # 658-59)  As explained above, the Court did not ignore these facts; instead, the Court addressed and rejected Gati's argument.

Fourth, Gati asserts that "the intentional discrimination by Wilkins was never mentioned or analyzed."  (D.N. 46-1, PageID # 870)  The present and prior briefing suggests that Gati is referring to Wilkins's testimony that she was unsure as to whether Gati was actually disabled. (*See id.*; D.N. 39-1, PageID # 753; D.N. 31-4, PageID # 214)  As explained above, Gati points to no error in the Court's earlier finding that Wilkins did not make the decision to deny his accommodation requests.[4]  Moreover, the Court did in fact mention Wilkins's testimony.  (D.N. 44, PageID # 851)  But, because Wilkins was not the decision maker, her opinions and conduct do not require the level of scrutiny that Gati disingenuously suggests is necessary.

Finally, Gati asserts that the Court only addressed the alleged flaws in WKU's process and procedures "in passing."  (D.N. 46-1, PageID # 870)  The Court reiterates that it already addressed and rejected Gati's argument that WKU's decisional process was flawed.  (*See* D.N. 44, PageID # 851)  The Court is unaware of any authority, and Gati cites none, holding that the

---

[4] Gati also cites Wilkins's testimony that she was "frustrat[ed] over the fact that [Gati] had filed complaints with . . . the Attorney General, the Consumer Protection Division, Kentucky Human Rights Commission, and now CPE."  (D.N. 46-1, PageID # 870; *see* D.N. 31-4, PageID # 214) On the very next page of the deposition, Wilkins explains that she was frustrated because Gati filed these complaints without completing his registration with student disability services.  (D.N. 31-4, PageID # 215)  This evidence falls short of showing intentional discrimination on Wilkins's part.

brevity of the Court's analysis of a particular issue warrants Rule 59(e) relief. None of Gati's arguments with respect to his motion for partial summary judgment are persuasive. The Court will therefore deny his Rule 59(e) motion.

**B.    Certification**

Gati asks the Court to certify the following question to the Kentucky Supreme Court: "Whether individual qualified immunity exists under the Kentucky Civil Rights Act?" (D.N. 46-1, PageID # 860) Gati asserts that "[t]he limited case law on this issue is at best confusing, and at worst, wrong." (*Id.*) Defendants respond that Gati has failed to timely notify the Court of this certification issue and that the law with regard to qualified immunity under the KCRA is settled. (D.N. 47, PageID # 877)

The Sixth Circuit has explained that "[t]he appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling." *City of Columbus v. Hotels.com*, 693 F.3d 642, 654 (6th Cir. 2012) (quoting *Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants*, 311 F. App'x 827, 832 (6th Cir. 2009)). Here, Gati waited until after the Court entered judgment against him to seek certification, and this fact weighs against granting his request.

In any event, the question Gati seeks to certify is neither new nor unsettled. Rather, "[q]ualified immunity is a defense that can be invoked under Kentucky law." *Morris*, 201 F.3d at 794; *see also Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). Gati appears to suggest that this rule does not apply to claims under the KCRA. However, the Sixth Circuit in *Morris* was addressing sexual-harassment claims brought under the KCRA when it held that the qualified-immunity defense could be invoked under Kentucky law and that one of the defendants was entitled to qualified immunity. *See* 201 F.3d at 793-94. Indeed, the court quoted the Kentucky Supreme Court in stating the rule for qualified immunity:

> [G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In most cases, qualified immunity is sufficient to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.

*Id.* at 794 (quoting *McCollum v. Garrett*, 880 S.W.2d 530, 534 n.6 (Ky. 1994)). Gati asserts that the court also found another defendant liable under the KCRA, but in fact, the court merely reversed the grant of summary judgment to that defendant because the district court incorrectly held that he could not be held individually liable under the KCRA. *See id.* The court went on to affirm the grant of summary judgment to another defendant on qualified-immunity grounds. *See id.*

Gati's remaining arguments require little discussion. Gati asks why these individual defendants are entitled to *qualified* immunity when Kentucky has waived *sovereign* immunity for claims brought under the KCRA (D.N. 46-1, PageID # 860-61). Of course, this question ignores the distinction between sovereign immunity, which applies to states and individuals sued in their official capacity, and qualified immunity, which may apply to individuals sued in their individual or personal capacity. *See Yanero v. Davis*, 65 S.W.3d 510, 517-18, 521-22 (Ky. 2001) (separately analyzing sovereign immunity and qualified official immunity). The two cases Gati cites in an attempt to suggest a lack of clarity in this area (D.N. 46-1, PageID # 861) fail to support his argument. The court in *Ivey v. McCreary County Fiscal Court*, relying on the applicable text of the KCRA, held that a person who did not qualify as an employer could not be held individually liable for certain employment-related conduct. 939 F. Supp. 2d 762, 769-70, 764 (E.D. Ky. 2013). And in *Adams v. United Parcel Service*, the court considered the relevant statutory language and concluded that an individual could be held liable for aiding and abetting

unlawful acts under the KCRA.  No. 1:06-CV-46-R, 2006 WL 1687699, at *2-3 (W.D. Ky. June 19, 2006).

A government official may be held individually liable under the KCRA in the event that qualified immunity does not apply.  *See Ivey*, 939 F. Supp. 2d at 764, 767 (explaining that "[w]hen officials are sued in their individual capacity, they enjoy only qualified immunity" within the context of KCRA claims).  But the application of the qualified-immunity doctrine to state-law claims—including those brought under the KCRA—is well settled, and the Court concludes that certifying this question to the Kentucky Supreme Court is not necessary.  *See Gragg*, 289 F.3d at 964; *Morris*, 201 F.3d at 793-94; *Ivey*, 939 F. Supp. 2d at 764, 767; *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007); *Suiter v. Logan Cty. Reg'l Det. Ctr.*, No. 2011-CA-000614-MR, 2013 WL 780390, at *3 (Ky. Ct. App. Mar. 1, 2013) ("In his individual capacity, [the jailer] is entitled to assert qualified official immunity against [the plaintiff's] claims under the Kentucky Civil Rights Act.").

IV.     **CONCLUSION**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Gati's Motion to Alter, Amend, or Vacate and to certify a question of law to the Kentucky Supreme Court (D.N. 46) is **DENIED**.

June 15, 2018

**David J. Hale, Judge**
**United States District Court**

24